### HENRY E. SHAWHAN *v.* ELIZABETH SMITH.

[Abstract Kentucky Law Reporter, Vol. 4—440.]

**Infancy Pleaded to Avoid Dower Relinquishment.**

> Where infancy is set up to avoid the effect of a deed relinquishing dower more than twenty years after the execution of the deed and after the old family bible in which her age was recorded is lost or destroyed and only an alleged copy is in existence showing such birth, the entry of which was made by one who married into the family, and the evidence of infancy is generally unsatisfactory, and the father of such child testifies positively that she was over twenty-one years of age when the deed was executed, should create in the chancellor's mind much doubt as to such infancy and such petition should be dismissed.

### APPEAL FROM BOURBON CIRCUIT COURT.

November 23, 1882.

OPINION BY JUDGE PRYOR:

This action was instituted in September, 1879, by the appellee, Elizabeth Smith, by which she seeks to recover dower in certain lands now owned by the appellant, Shawhan, and purchased by him from the vendee of appellee's husband. The defense interposed to the action is that the appellee united with her husband in a conveyance of this land to the appellant's vendor in the month of September, 1855, twenty-three years before this suit was brought. The husband of the appellee died, however, but a short time before the claim to dower was asserted, and the statutory bar, therefore, can not affect the right of recovery. When the conveyance entered into by the appellee was produced with the defense filed, the appellee in order to avoid its effect pleaded that at the time of its execution she was an infant, and upon this reply an issue was formed and the only question in the case is, Was the appellee an infant when the deed was executed? The family Bible containing a register of the births, etc., of the family seems to have been lost, and the testimony of appellee and other members of the family is based upon what

purports to be a copy of that register transferred to Bibles in their possession. The appellee says that entries were made by her husband, he having the old Bible before him at the time. A copy was sent to the sister of the appellee, in the city of New York, whose recollection is based upon this copy and who also testifies as to the family history, giving the ages of its various members; others who are related speak of the age of their own children and have a knowledge of the age of the appellee in that way, as well as their own recollection of the date of appellee's birth. The testimony as to her being an infant at the time would be entirely satisfactory but for the statement of the father of the appellee and other facts and circumstances that throw much doubt upon the question. In the first place it is a little remarkable that the family Bible containing a correct register of the births, etc., of the members of this family has been lost, and its contents supplied by entries made in other Bibles and by those who were not members of the family except by reason of their marital relations. The father of the appellee testifies that his daughter was of age at the time she executed the conveyance and that he so informed her both before and after the institution of the action. A Bible was shown him by his daughter, Mrs. Clay, in which had been transcribed the births of the family. The entries were made in an unknown handwriting and were all wrong and to use his own expression "there was not a birth recorded right. It makes the two oldest a year younger than they really are and so on with the rest of the family." He states that his first child was born in December, 1829, and then proceeds to give the births of his several children born after that time. He may be mistaken as to the age of his daughter and is doubtless unable to give a correct history of the dates of several births of his children, but his recollection is so positive as to his daughter being of full age at the time of the execution of this deed as to indicate that he had no doubt in his own mind on the subject. He seems to entertain no prejudice or bad feeling towards his daughter, and his failure to give the age of some of his children, and the date of his subsequent marriage, while it may evidence a want of memory certainly evinces a candor in the statements that entitle his testimony to great weight in this case. Besides, it is evident from his testimony and that of at least one of his neighbors that entries had been made of dates evidencing the time of the birth of some of the children that were incorrect and made them at least one year younger

than they really were. It is apparent from the conveyance exhibited by the appellant that the appellee signed and delivered the conveyance in conjunction with her husband, and from the uncontradicted statement of the appellee's father one of the notes for the purchase-money was made payable to his daughter. Why this was done is not made to appear, nor is it material further than to show that the appellee, although then married, received a part of the consideration. Under such circumstances it is not to be presumed that the husband and wife, or either of them, would execute a conveyance and obtain appellant's money or that of his vendor, when they must have known that the wife by reason of her infancy was unable to convey, but on the contrary it is a legitimate inference from their action in the premises that at the date of the conveyance they both must have believed that the wife was able to convey. It is true no fraud on the part of the appellee is alleged or proved, but the fact of her executing the deed is very persuasive of her belief in her capacity to convey. This is unlike a case where the feme has never relinquished her dower in the land of her deceased husband. Here she admits the relinquishment in accordance with the forms and ceremonies of the law and attempts to avoid her act on the ground of her infancy at the time. The conveyance was made twenty-two years prior to the institution of the action. The family Bible in which was written, in the handwriting of her father, the date of her birth is lost or destroyed, and only copies or entries of the births of various members of the family, found in other Bibles and in the handwriting of those not members of the family except by marriage, are produced for the purpose of annulling the deed so far as it purports to pass the dower of the appellee. That these records are sustained by the statements of neighbors and relatives to some extent must be conceded, but it is manifest that changes had been made as to dates of birth by some of the members of the family, and when the father who still survives is so confident of her being of full age at the date of the deed, and the fact that she did execute it, must create in the mind of the chancellor much doubt as to the fact of the appellee's infancy when she signed and acknowledged the deed. The chancellor, when a conveyance has been fully executed, should be well satisfied, after the lapse of so many years, of the right of the feme to recover before entering a judgment depriving the appellant of the use and possession of the land, and with the only surviving parent maintaining before and after this suit.

was instituted that his daughter was of full age, strengthened by the circumstance that she did in fact convey, the relief should have been denied and the appellee's petition dismissed. The issue in this case is not a legal issue. A court of equity alone had jurisdiction of the question involved and, therefore, the case is not to be treated as an issue of fact disposed of in a common-law action.

Judgment *reversed* and cause remanded with directions to dismiss the petition.

*C. W. West, for appellant.*
*Chas. Offutt, for appellee.*